16-05-00, People of the State of Illinois, Lincoln Avenue, v. Thomas Gallagher, Attorney General. Attorney General, Mr. Christopher M. McCoy, Attorney General of Lincoln Avenue, v. David H. Butler. Mr. McCoy. May it please the Court. Counsel. My name is Christopher McCoy from the Office of the State Appellate Defender, and I represent Mr. Thomas Gallagher. Your Honors, the primary issue in this case is whether the State proved beyond a reasonable doubt that the defendant threatened the imminent use of force against the victim, Mr. Ortega, in this case. And there are many ancillary facts in this case, but what the threat element really boils down to is whether the defendant's running up the driveway and into the victim's home constituted, again, this threat of imminent force. Well, when he did that, or when the defendant and his companion did that, they were wearing masks. Correct. And gloves. Correct. And the victim saw them running wearing masks and gloves, correct? Correct. And it was that, together with the entry into the garage and the house, that caused the fear on the part of the victim, who then ran out of the house without most of his clothes on. That's correct. Yes, the victim was afraid, but there still was not an actual threat made. Does there have to be an actual threat made, though? Well, what the statute says is threatens the imminent use of force upon any person. So what other courts have considered in determining if there was this threat? Well, and many of these things, of course, considered aren't present in this case. There's no verbal threat, in fact, no verbal communication at all. No property damage, no display of weapons, and most importantly, no interaction between Mr. Gallagher and Mr. Ortega. In every other case, and that distinguishes every other case, in every other case there is some type of interaction between the defendant and the victim. Why did there have to be interaction at this point? I mean, this was the victim's home. They were not just sneaking around the house to try to get in. I mean, he saw them running towards his house, again, as I said earlier, with masks and gloves. So why did there have to be specific interaction? Well, because, again, a threat requires some type of interaction, either communication or an encounter between two persons. I mean, for all the victim knows in this case, I mean, they could have just been coming into the house to steal something and not looking for a fight. So you're saying they have to be face-to-face? Is there a requirement they have to be face-to-face? Well, you can't threaten someone that you don't even know where they're at. I mean, this case is the same as if Mr. Ortega, when he saw the defendants coming up the driveway, if he hid himself in the bathroom, locked himself in the bathroom and stayed there the entire time they're in the house, that's the same as what we have here. There's no indication that the defendants even knew where Mr. Ortega was at, let alone interacted with him in any way. Well, they don't have to know where he is, right? That wouldn't necessarily be required, but he has to know where they are. And he was actually present when they came in the door, correct? He was, but again, there needs to be some type of mutual awareness between the parties in order to threaten someone. Well, why, okay, if it's a residential burglar, why are they both wearing things to cover their face? So if no one can identify them, none of the neighbors can see who they are to go in the house. Well, first of all, let's talk about running up the front driveway. This is not, I would say, one of the most common baiters in the world, but be that as it may, if you're going to go in to steal something, first of all, you're going to think nobody's there. At least that would cross my mind. But why would you conceal yourself? What's the purpose of that? It's not Halloween. It's June 12th. If you're going in to steal something, you're forming a criminal intent and wanting, you don't want to get caught. You want to protect yourself from being identified, whether you're looking to fight the person inside or you're looking to steal something from the person inside. Well, the car was stopped not right in front of the house, so they had to make some, you know, walk or something. But, I mean, they tried to sort of disguise the car by not parking it in the driveway. Correct. But it just, it doesn't make a great deal of sense that they didn't intend to do something in that house that was inappropriate with masks. We're not disputing that. We're not disputing that Mr. Gallagher is guilty of residential burglary and he's being punished for that. But he's not guilty of home invasion because these acts, the running up the driveway, entering the home, that hasn't taken this case out of the ambit, the orbit of just a this is enough to satisfy home invasion, it's going to be very hard to distinguish a residential burglary case from a home invasion case. Well, they know his car's there. They do. And they, one of them actually makes a statement that he's home, right, because his car's in the driveway. Correct. So, you have their knowledge that somebody's in the home or they believe somebody's in the home, then they're running up the driveway masked and the victim sees them masked coming up his driveway and hears them come in the home. Isn't that enough to convey to a reasonable person that, hey, my safety is in danger here, they're threatening my safety? Well, again, that assumes that they're going to do something physical to the victim. For what he knows, he doesn't know what they talked about in his car. He doesn't know what's in their minds. He, you know, yes, there's probably some generalized sense of fear, but is it a threat of imminent force upon his person? And looking, there's not a lot of cases on home invasion, but if you look to the robbery statute, a defendant's not guilty of robbery even if he tells the victim, hand over the money in the bag. Instead, she needs to take some action to lead the victim to believe that he's armed or that he's threatening force against that victim. And that implies some type of interaction, some type of encounter between the defendant and the victim. Well, how about people versus co-paps? I mean, that was a case from the Second District in 1985, an older case, but doesn't that preclude any argument that the threat of imminent use of force must occur only after the defendant enters a dwelling? I mean, there, the defendant argued that the unlawful entry had to occur first and then the threat afterwards, but the court absolutely said, no, that's not the situation, not the case, and in fact, that would be contrary to the purpose of the home invasion statute. Isn't that, in essence, what you're saying here? No, absolutely not. We are not arguing that the threat had to occur inside the home. So you're saying they could have done, but then how would there have been some interaction? If the threat didn't occur in the home, then do you want the victim or take it to come outside and say, what are you doing here, and then the threat? So if he walked out the door, you're saying he had to walk out the front door. As you saw these people running towards a mast with gloves and up the driveway, and then he would have felt the threat and then he could have tried to flee out the back door? I think the distinction seems to me is a pretty narrow line here you're trying to draw. Well, let me just step back to your first question about Kavakas. So we're not arguing, again, that the defendant had to threaten the victim inside the house. If the defendant walked up to the front window, saw the victim, and pointed the gun at the victim, you have some sort of interaction. It's not verbal communication, but you have a threat implicit with pointing the weapons at him. If you look at what happened in Kavakas, the defendant is at the window, cutting a window screen with a knife, and talking to the victim from outside the house. That's not the situation we have here. There's no case where this little has been held to constitute a threat. And really, what the state is trying to do is stretch home invasion to a place it's never gone before, and to a place that, again, kind of almost totally encompasses the residential burglary statute. All right. Well, let's, I guess the best, maybe a good way to do it is to dissect the statute. That a person who is not a police officer acting in the line of duty, we don't have anybody acting in the line of duty here. Is that a given? Yeah. I mean, the only element we are arguing is the language threatens the imminent use of force upon any person or persons within the dwelling place. So... If someone is running, and now we've established also that they have reason to believe that the victim is present, his car is there. So if someone is running up to my house in a bandana over his face, and my car is in the driveway, I don't think they're coming to have lunch. They're coming, there is something that is going to happen that is not going to be favorable. But that's not a threat. It's not a threat. It's a threat of imminent force. Their presence is a threat, especially once they get in my door. It's a, but again, the threat is imminent force. The, again, the victim here doesn't know what they're doing. Doesn't know if, as soon as they see him, they're going to panic it and run out the back door. He doesn't know what's going on. So he has to wait until they brandish a weapon? Well... Or beat him? I mean, that's what the home invasion statute, you know, the other aspect of home invasion that didn't happen here, some injury. But, I mean, I think, I mean, I hear what you're saying, but then the opposite conclusion isn't right either. Well, the, obviously he doesn't have to stay in the house, but the state has to prove the threat of imminent force actually occurred. So at what point are you saying, forget about what actually happened here, at what point are you saying that would have been accomplished? If he had remained in the house and they showed him a weapon? Yes, yes. Okay, so that would be. Yeah. What if he ran out, what if he sees them coming in with a weapon, but he runs out? Is that... Well, I, that's a closer case. And I think that does get towards, you know, some of the robbery cases, which do require some type of showing the weapon or indication that the defendant is armed and some communication with the victim. Are you saying that showing a weapon, brandishing a weapon of some sort is necessary? It's, it's not the only way it could accomplish, but it's telling that that doesn't happen in this case. It's, you know, one of the major factors that courts have looked to in the cases we've cited in our brief is does the defendant have a weapon or not actually does the defendant have a weapon, but does the victim know he has a weapon? It's what the And it's, here he just, a threat hasn't been accomplished. I mean, maybe this is attempt home invasion, but the completed crime hasn't occurred. And this kind of ties into the one actual crime argument, but home invasion, you need two things. You need the entry and you need a threat, and they both have to be accomplished before you have the completed crime. And that just didn't occur in this case. Mr. Ortega may or may not have known these people because isn't there a discussion allegedly beforehand that Ortega robbed us. Let's go to his house. He does not know Mr. Gallagher and he does not know Mr. Gorgeous. That's testified to by Mr. Ortega and by, I think it's Catherine Fife. Catherine Fife, another one of the co-defendants Ortega knows is Zach Bartel, who stays in the car and is never seen by the victim. Does Mr. Ortega, is there evidence in this record that Mr. Ortega has reason to believe that he may be, there may be some revenge to be put upon him from an action that he took? I mean, not that they've put it, not that the state presented it. Ortega testifies that his friendship with Bartel kind of breaks up because Bartel starts using, starts using heroin and they kind of get a disagreement about that. But ultimately, he doesn't know who these people are. And as I said, the approach to the house, the entry to the house, all of that could just be residential burglary. We need the threat to take it up to the higher class, the class X conviction. And again, that's just not present in this case. Well, for residential burglary, there's the one act. I mean, the entry you're saying. But here, the state, certainly the state's position is there was more than that, more than just the unlawful entry. In terms of the reasonable value? No, in terms of the one act, one crime. Yeah. So normally, as I said, residential burglary and home invasion don't implicate one act of crime because the act for residential burglary is the entry. The act for home invasion is two acts actually, entry plus something else. And so how it was charged in this case that some other act was the threat, but how the state prosecuted this case in the court below is they treated the entry as part of the threat. So there's a Crespo problem here in that, in fact, in closing, the state said he went into the home with a firearm. There was a threat of force. So the state isn't apportioning the different acts between both convictions. So we don't have two separate acts that can sustain both the residential burglary and the home invasion conviction. So if this court does not reverse the home invasion conviction, the res burglary has to be vacated based on one act of crime. Mr. Seidman? No. You have an opportunity to reply, Mr. McCoy. Good morning, Your Honor. Good morning. I think, first off, we have to recognize that the purpose of the home invasion statute is to protect people in their homes. Now, I think if I or anyone in this courtroom saw someone running up with masks on and gloves on up my driveway, I would take that as a threat. And it's clear that you don't have to have the threat after the entry. You can have the threat before the entry. But I think it's counsel's point that there had to be more of an interaction between Mr. Ortega and the two to constitute a threat of force. How do you respond to that? Well, I disagree because the fact is, if we have to have this interaction, I think the interaction was him looking out the window and seeing these people jumping out of a car, running up the driveway, wearing masks, wearing gloves. And the fact that the car drove off, I think there is an interaction right there. It's not within, you know, close proximity, but there's an interaction which causes that victim to, you know, try to escape. This guy actually tried to get out the back window, and then he was going to jump out the window. He was so afraid. And then the table broke he was on, and so he went out the front. He heard these people coming in. His dog was barking. And he took off in his underwear. Well, can we consider his reaction in determining whether there was a threat of force? I think we should, yes, certainly. And I think we can look at the others. Before this crime occurred, how they planned this, you know, this Barthel, you know, said he was robbed by the victim, and so they were going to go in and get even with him. You can look at that as an attempt, too, of the defendant. The fact that Gorgas said, one of the other co-defendants said, yeah, well, he doesn't, you know, give us his drugs and his money. I'm going to make him. Again, that goes to your state of mind and intent also. And so I think if we look at that and then the victim's reaction, I think it's clear that this was a threat before the entry. And why else does that mean if we have people running up to our house wearing masks that you're not safe in your home? If you're not safe in your home, he wouldn't have run out if he didn't feel this fear. So, you know, we just have to disagree with the defendant's contention. Now. Well, and he did hear their voices. Correct. When they entered, right? Not that they were talking to him. I mean, but he heard an entry and he heard. I think he heard two entries, the one into the garage, then into the house. His his his dog started barking when they entered the garage and it became even more intense as they were entering the house and went out the front door. To me, I think any normal person, any reasonable person would be doing what that defendant did. And well, and actually not that this is a major thing, but just the fact that people entering your home here, a dog barking, continue to enter. That's not a major thing, obviously, could be a German shepherd, but that does normally give people pause. Correct. Correct. And when you add all these things up, we have a victim who is certainly fearing, you know, that he may be injured in this. He's terrified. He's terrified. Correct. You know, the statute talks about uses force, which would be a rather objective thing, a gun, a knife, whatever, or threatens the use of force upon any person. This is where there might be some breakdown. Is it now what the defendant intended or what the victim perceived? I think in this case we have to look at both. I think we have to see the victim's perception, make inferences and make inferences from what the defendant intended. Again, we also have to remember this isn't one one person running up with a mask and gloves. It's two people. If you were a victim, you go, OK, maybe I can handle one person. But two men running up, that would certainly be, you know, a scary thing. So I would say that when you look at all these conditions, it's clear that the victim was in great fear and the defendants, this defendant particularly, intended to threaten force. They did have firearms. They didn't have a mount that he saw, but they were carrying them. They don't have to have a mount, but that's part of the thing. They brought two men with two firearms into that house. Now, we don't know for sure whether they had a mount or not. I would think maybe, but he was so scared. He saw these guys coming up. He didn't see what was in their hands. But we have to realize, we have to look to the victim to decide whether there's this threat. And we also have to look to the intent of the defendant. And we have those statements from the other defendants about why they were going to go into this house. Well, one of them, Borges, as he was leaving, did point a gun at Ortega after Ortega had left the house and was watching them. Correct. And that can go to the intent of these two also, because obviously, if he had tried to keep them from stealing the safe or whatever money he had, they would have used these guns. Whether a bludgeon or shot him, they wouldn't have ran away. They were clearly here to get even with this person, to help their friend get even with this person. And they wanted the money and if there were drugs in that house. So it is clear that this is a threat. And then those same defendants threatened to enable it. As he was calling 9-1-1, they pointed a gun at him and he ran back into his garden shed and stayed on the phone and called the police until they were in. So clearly these people had the intent to use those guns if they needed to, certainly to threaten other people. They threatened the neighbors and they did threaten the victim once outside. And we look at cases like Cole's where the defendant breaks into his wife's apartment and her boyfriend or friend was there too. While he's screaming at her, this boyfriend kind of sneaks out. He goes after the boyfriend and beats him up. Well, this is not in the apartment, but it was certainly outside and it certainly goes to his intent. And I think all these cases now, Cavacas and Trout and Anders, these were probably more clear cases because they were right up in front. They were pushing through. But that doesn't necessarily mean that the victim is any less scared when he sees people running up the driveway. What about the argument, and actually Mr. McCoy used the language from the, I guess the closing statement, they entered the house with a gun. Why isn't it just a residential burglar or why isn't it just an unlawful or a home invasion? Well, number one, because of this running up in the threat. I think what he was talking about is common sense would say if someone's breaking into someone's home, you would take that as a threat, just that alone. And I don't think there's any reason why a jury couldn't think about that too. But they did make sure that there's two elements proved here. The fact that the threat of running up the driveway with masks and gloves on and the fact that then there was an entry. But I don't think you put blinders on and say, oh, yeah, they entered with guns. So that that doesn't count. Well, of course it does. It goes to it doesn't go towards the fear of the victim because he didn't know they had guns. But it certainly goes to the intent of the defendant that he was ready to provide an imminent threat to that victim. Now, the residential burglary. I think it's clear. And I think that the the state did make clear studio and produced that there were two separate acts. We were talking about, you know, the running up to the driveway and the entry. So, you know, so there was that extra element in home invasion that we didn't have in residential burglary. So I think it's clear that that should, you know, remain as a conviction. What what was the what's what was the proof on the residential burglary that they entered without permission? Correct. With the intent to commit a felony or a theft. And that's all you need for a residential burglary. And the fact is they had gloves, mask, a gun to people that it was clear they were at least going to go in for a theft. So I think that's clear that residential burglary is what's the appropriate conviction? Are there any other questions? Thank you. Mr. McCoy. To pick up on counsel's last point, if this really was two acts, if the act for home invasion is running up the driveway and the act for residential burglary is entering the house, then the entering the house for the sake of a regional document that can't be considered. If all they're arguing is just a running up the driveway, then from the moment they touch the door, they can't do anything else beyond that and say that is part of the threat. Now, again, turning to the reasonable doubt argument, counsel mentioned that the victim was afraid. Well, he wasn't afraid enough that after the defendants leave the house, he's not afraid that he doesn't go back in the street to confront them. He does. He leaves. He goes and yells at him, gets in the middle of the street. So that that's part of the victim's reaction to that. He's not as confident enough to go back and confront these people after they leave his house. And in fact, Mr. Ortega testified that he just assumed that he was going to be harmed. He never testified, again, to any kind of actual interaction or actual threat being presented by him, by the defendants. And finally, counsel mentioned a lot intent. We're not arguing intent. What the defendants said to each other before this crime occurred, that's not a threat because the victim never heard it. Again, sure, they had an intent to threaten, but that would make it an attempt home invasion. It's not a completed crime of home invasion. And the victim's reaction certainly can lessen the seriousness of a crime. And that's what happened here. We did not have a completed crime in this case. Well, if the if as we're talking here, the threat is he perceives a threat as they're running up the driveway. And we know that I guess they have a gun. Somehow we find out later that they have a gun and they get into the house. Isn't that home invasion? No, because there hasn't been a threat of imminent force. And the guns don't factor into this threat because the victim never sees them. I know that we're now we're talking about proof of the offense. The threat you said going into the house or that opening the door is not an issue. If going up to if the running up to the house is the threat and that's the threat he perceives, there's going to be a threat of harm to him. They're not coming to the front door. They're going to the side door. They're running up. They have bandanas or they're covering their face. They enter the house for the home invasion is correct, or do they enter it for the residential burglary? You just said going in the house doesn't mean anything. Well, let me let me explain that a little further. So what counsel argued in terms of the second issue, the one act of crime, is that you can divide them into separate acts. You can say the threat, the act of residential burglary was the injury and the act of home invasion was a threat. So if that's correct, that one act of crime is correct. Then for purposes of our reasonable doubt arguments, all that can be considered for the threat is what happens before they actually enter the house. It can just be the running up to the driver. Now, our position is that that did not constitute a threat of imminent force as if there was no interaction with the victim in that time period. So that so even even if the defendants had the intent to threaten someone they saw in the house again, that there was no that that's the men's brain. The act is raised here was never completed because that's records was never made. Would they come out and he then confronts them or there's this disagreement? Is it over by that time? Well, a few points on that. We brought that up in our opening brief. The state in this brief never respond to it. So according to the case law, which we said in our reply, they've effectively raised that wave that issue and conceded that that wasn't the threat. More than that, though, even if this issue were not waived, the state did not pursue an accountability theory in the court below. And it was the codependent, not Mr. Gallagher, that points the gun at Mr. Ortega after the fact. So if there's no concerns, due process concerns to sort of changing their theory on appeal. Unless there are any further questions, Mr. Gallagher, I respectfully request that this court reverses home invasion conviction or alternatively vacate the residential. Thank you. All right. Again, thank you, gentlemen, for argument this morning. We will take the matter under advisement. We're going to stand in recess and we will be back.